**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FEB 2 2 2016

Clerk, U.S. District Court
By_____ Deputy Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-cm-8030-JPO |
| | ) |
| | ) |
| MAYRA A. ESCOBEDO-GAMBOA, | ) UNDER SEAL |
| JUAN DUARTE-TELLO, | ) |
| DIANA AURORA HOLGUIN- | ) |
| GALLEGOS, | ) |
| CARLOS LNU A/K/A RICARDO | ) |
| JIMENEZ-RAMIREZ", and | ) |
| ALEJANDRO LNU, | ) |

Defendants.

## CRIMINAL COMPLAINT

I, Special Agent Brandon Burkhart, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief.

### COUNT 1

Beginning on or about August 12, 2015, and continuing to on or about to February 22, 2016, the dates being approximate and inclusive, in the District of Kansas and elsewhere, the defendants,

**MAYRA ARELY ESCOBEDO-GAMBOA,
JUAN DUARTE-TELLO,
DIANA AURORA HOLGUIN-GALLEGOS,
CARLOS LNU a/k/a RICARDO JIMENEZ-RAMIREZ, and
ALEJANDRO LNU,**

knowingly and intentionally combined, conspired, and agreed together and with each other, and with other persons known and unknown to the affiant, to distribute and possess with intent to distribute more than 50 grams of methamphetamine, a controlled substance,

1

in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii), which was all in violation of Title 21, United States Code, Section 846.

### QUANTITY OF METHAMPHETAMINE INVOLVED IN THE CONSPIRACY

With respect to defendants **MAYRA ARELY ESCOBEDO-GAMBOA, JUAN DUARTE-TELLO, DIANA AURORA HOLGUIN-GALLEGOS, CARLOS LNU a/k/a RICARDO JIMENEZ-RAMIREZ,** and **ALEJANDRO LNU,** their conduct as members of the methamphetamine conspiracy charged in Count 1, which includes the reasonably foreseeable conduct of other members of the conspiracy charged in Count 1, involved more than 50 grams of methamphetamine, a controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(A)(viii).

### COUNT 2

On or about December 18, 2015, in the District of Kansas, the defendants,

**MAYRA ARELY ESCOBEDO-GAMBOA and
DIANA AURORA HOLGUIN-GALLEGOS,**

knowingly and intentionally used a communication facility, to wit: a telephone, in committing, causing, and facilitating the offense set forth in Count 1 of this Indictment, incorporated by reference herein, in violation of Title 21, United States Code, Section 843(b).

### COUNT 3

On or about December 22, 2015, in the District of Kansas, the defendants,

**MAYRA ARELY ESCOBEDO-GAMBOA and
JUAN DUARTE-TELLO,**

knowingly and intentionally used a communication facility, to wit: a telephone, in committing, causing, and facilitating the offense set forth in Count 1 of this Indictment,

2

incorporated by reference herein, in violation of Title 21, United States Code, Section 843(b).

## COUNT 4

On or about February 18, 2016, in the District of Kansas, the defendants,

**JUAN DUARTE-TELLO and
CARLOS LNU a/k/a RICARDO JIMENEZ-RAMIREZ,**

knowingly and intentionally used a communication facility, to wit: a telephone, in committing, causing, and facilitating the offense set forth in Count 1 of this Indictment, incorporated by reference herein, in violation of Title 21, United States Code, Section 843(b).

## COUNT 5

On or about February 18, 2016, in the District of Kansas, the defendants,

**JUAN DUARTE-TELLO and
ALEJANDRO LNU,**

knowingly and intentionally used a communication facility, to wit: a telephone, in committing, causing, and facilitating the offense set forth in Count 1 of this Indictment, incorporated by reference herein, in violation of Title 21, United States Code, Section 843(b).

## COUNT 6

On or about February 18, 2016, in the District of Kansas, the defendants,

**JUAN DUARTE-TELLO,
CARLOS LNU a/k/a RICARDO JIMENEZ-RAMIREZ, and
ALEJANDRO LNU,**

knowingly and intentionally possessed with intent to distribute more than 50 grams of

methamphetamine, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), and Title 18, United States Code, Section 2.

## COUNT 7

Beginning on or about February 14, 2016, and continuing until on or about February 22, 2016, the exact dates being unknown to the affiant, in the District of Kansas, the defendants,

**JUAN DUARTE-TELLO,**
**CARLOS LNU a/k/a RICARDO JIMENEZ-RAMIREZ and**
**ALEJANDRO LNU,**

did unlawfully and knowingly opened, used, rented and maintained a place, that is, a residence located at 4528 Haskell Avenue, Kansas City, Kansas, for the purpose of distributing and possessing with intent to distribute methamphetamine, a controlled substance, in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.

I have been a Special Agent with the Drug Enforcement Administration (DEA) since August 2003. Prior to that, I was a Police Officer with the University of Kansas Public Safety Office. I have investigated numerous complex conspiracies involving controlled substances and money laundering violations, and I am currently assigned to DEA's Kansas City District Office. The information in this complaint was obtained by me personally, from other agents with DEA, the Federal Bureau of Investigation (FBI), and/or Homeland Security Investigations (HSI), and from law enforcement officers or their official reports.

1.      On August 12, 2015, the Honorable Julie A. Robinson, United States District Court Judge for the District of Kansas, signed an order authorizing interception

of wire and electronic communications over Unindicted Co-Conspirator's (UCC 5) phone number 913-XXX-6278 (**Target Telephone 3**).  Interception of **Target Telephone 3** commenced the same day, and was terminated on August 26, 2015.

2.    On August 13, 2015, at approximately 2316 hours, agents intercepted an outgoing call from UCC 5, below) on **Target Telephone 3** to phone number 816-XXX-2693, used by Mayra A. ESCOBEDO-GAMBOA (ESCOBEDO, below).  Excerpts from that monitored and recorded communication are set forth below (translated from Spanish):

| | |
|---|---|
| **UCC 5**: | "Hey!  Did the man up there call you?" |
| **ESCOBEDO**: | "No, dude. They haven't called me. Who knows what's going on? I want to go over there**...** [Aside: what do you want?  Go to sleep now] this girl is giving me a hard time." |
| **UCC 5**: | "A lot?" |
| **ESCOBEDO**: | "You'll have to see... look, a very hard time.  But they haven't...once they call me I'll give you a call...no worries." |
| **UCC 5**: | "Well, I do worry because [*/stammers*] I want to get rid of that shit. Do you know what I mean?" |
| **ESCOBEDO**: | "Uh... let me... and what did "Peloncito" [PH] Say?" |
| **UCC 5**: | "He's fine. Everything is good." |
| **ESCOBEDO**: | "You see..." |
| **UCC 5**: | "Is just that I have... I have... I have some over here and, uh... I haven't been able to place/distribute them because it's rough, dude.  What was I going to tell you?  No, no..." |

[OMIT]

**UCC 5:**          "Give me the numbers. I can see them tomorrow." [*/pause*]

**ESCOBEDO:**      "Yes, yes. [*/pause*] either way, don't worry about it ... man, I need you to get me a nice present because I like to get presents, right?"

[OMIT]

**UCC 5:**          "Look, dude. [*/stammers*] you know how my situation is and you are asking me to give you presents. I'm about to slap you with a wet and open hand."

**ESCOBEDO:**      "[*/laughs*] fucking "pony" [U/I]."

**UCC 5:**          "Instead of helping out the poor when is drowning, you wait until it fucking died."

**ESCOBEDO:**      "Look, I'd like a little Burberry bag."

                   [VOICES OVERLAP]

**UCC 5:**          "Well, tell the sons of [*/stammers*] the son of Paquito to…"

                   [VOICES OVERLAP]

**ESCOBEDO:**      "Uh-huh yes, yes, yes."

**UCC 5:**          "To be ready [*/stammers*] to place/distribute one or two I have here; so, I'll have for the rent and also to buy you you're fucking bag. You know that I buy you whatever you want, but when I have money if I don't what can I buy you?"

3.      Based on my training, experience, knowledge of prior and subsequent interceptions, and familiarity with the targets of the investigation and coded drug trafficking communications, I believe UCC 5 told ESCOBEDO-GAMBOA that he had

methamphetamine on hand that he had been unable to distribute it, evidenced by his statements that, "I want to get rid of that shit…I haven't been able to distribute them because it's rough," and ESCOBEDO-GAMBOA was asked to make contact with an unidentified third party buyer to help facilitate a drug transaction.

4.       On September 15, 2015, the Honorable Julie A. Robinson, signed an order authorizing interception of wire and electronic communications over UCC 5's phone number 816-XXX-7637 (**Target Telephone 4**) and the various and changing phones used by UCC 5.  Interception of **Target Telephone 4** commenced on September 17, 2015, and was terminated on September 25, 2015.

5.       On September 18, 2015, at approximately 2048 hours, agents intercepted an outgoing call (Session 21) from UCC 5 on **Target Telephone 4** to phone number 209-XXX-2853, used by ESCOBEDO-GAMBOA (ESCOBEDO, below).  An excerpt from that monitored and recorded communication is set forth below (translated from Spanish):

**ESCOBEDO**:        "Well, Juan called me already, dude."

**UCC 5**:        "Uh-huh."

**ESCOBEDO**:        "He said that what was going on with you?"

**UCC 5**:        "Uh-huh."

**ESCOBEDO**:        "Well, he already… he had never said anything to me before, until now, he just called me and he told me "Listen, honey. What happen with 'Pony' [PH]?"

**UCC 5**:        "No, well I haven't taken out that shit yet. It's still there. If he wants it, it's there."

**ESCOBEDO**:        "No, dude, look... to talk like... what do you mean if he wants it, it's there, dude?"

7

| | |
|---|---|
| **UCC 5**: | "Well, yes dude. I haven't taken it out yet." |
| **ESCOBEDO**: | "Well, you have…you almost have a year, dude. How can you not take it out?" |
| **UCC 5**: | "Well, if he wants some of that, a cold one." |
| **ESCOBEDO**: | "What?" |
| **UCC 5**: | "If he wants a cold one, he can get a cold one, as payment." |
| **ESCOBEDO**: | "Well, I think so." |
| **UCC 5**: | "Well, tell him then and we can do that tomorrow." |
| **ESCOBEDO**: | "Because he already [/stammers] told me, dude." |
| **UCC 5**: | "Uh-huh." |
| **ESCOBEDO**: | "You know he had not told me anything before. [U/I] nothing… [U/I] nothing." |

                              [VOICES OVERLAP]

| | |
|---|---|
| **UCC 5**: | "Well yeah dude. I'm not…I'm not…I'm not… I'm not saying no, no. I'm just saying…it's there. It's there, and well... I have never said no.  Or have I?" |
| **ESCOBEDO**: | "No, no dude. That is why..." |

                              [VOICES OVERLAP]

| | |
|---|---|
| **UCC 5**: | "Then?" |
| **ESCOBEDO**: | "I told him, 'No, let me talk to him, to see that he tells me.' That is it. So, should I tell him that?" |
| **UCC 5**: | "Well, yes." |

6.      Based on the content of that call, together with the content of prior and

8

subsequent interceptions, I believe "Juan" (a reference to Juan DUARTE-TELLO) had facilitated the transport of an unknown amount of methamphetamine to the Kansas City area for UCC 5, and after almost a year, UCC 5 had not paid him for his assistance.  I also believe ESCOBEDO-GAMBOA was attempting to collect the transportation fee on DUARTE-TELLO's behalf, at which time UCC 5 offered him an undetermined amount of methamphetamine, referred to as a "cold one," as payment instead of cash.

7.      On September 19, 2015, at approximately 0825 hours, agents intercepted an outgoing call (Session 24) from UCC 5 on **Target Telephone 4** to phone number 209-XXX-2853, used by ESCOBEDO-GAMBOA.  An excerpt from that monitored and recorded communication is set forth below (translated from Spanish):

| | |
|---|---|
| **UCC 5**: | "At what time can I see you?" |
| **ESCOBEDO**: | "Well, I'm on my way to "Leslie's" [PH], we are going to have breakfast. I don't know if you want to go over there… but he said he wants it good, he doesn't want garbage, that he doesn't [*/stammers*]… well that he wants a good 'Pinguinito' [Literally: 'small penguin'].  [SHORT PAUSE] Did you hear me? Pony?" |

[VOICES OVERLAP]

| | |
|---|---|
| **UCC 5**: | "When have I given you garbage or, or something like that?" |
| **ESCOBEDO**: | "No, no, no. You have never given me, but remember...." |

[OMIT]

9

| | |
|---|---|
| **ESCOBEDO**: | "Well, he doesn't know that you... that, but that's why I'm telling you. That's what he told me, that he wanted things right. [BACKGROUND: NOISE] I'm just telling you." |

8.      On September 19, 2015, at approximately 2146 hours, agents intercepted an outgoing call (Session 41) from UCC 5 on **Target Telephone 4** to phone number 209-XXX-2853, used by ESCOBEDO-GAMBOA.  Excerpts from that monitored and recorded communication are set forth below (translated from Spanish):

| | |
|---|---|
| **UCC 5**: | "Okay. How much is the, the, the, the, the amount? What's the total amount?" |
| **ESCOBEDO**: | [/pause] "How much it is?" |
| **UCC 5**: | "Uh-huh. How much is it for all?" |
| **ESCOBEDO**: | "Well, you should know. You don't remember how much it is?" |
| [OMIT] | |
| **UCC 5**: | "You remember, right? I gave you one [U/I] one time and then I gave you another, and then I gave you some more another time. How much was what you [U/I]?" |
| | [VOICES OVERLAP] |
| **ESCOBEDO**: | "Well, don't you worry about it. Everything is written down. You're not going to trick me or fool me, and neither will I. everything is there. Everything is written down." |
| **UCC 5**: | "No, no, no, no, no. You just need to tell me how much it is and, and, and, and I'll give you everything tomorrow. Do you understand?  So I'm not going back and forth, everything at once.  You know what l mean?" |

ESCOBEDO:       "Oh well, then right now when, when, when [/stammers] I
                get home and everything, I'll check for sure, because I'm
                not there at the house. I'll look and all and I'll call you or
                send you a text."

[OMIT]

UCC 5:          "I told you about that a long time ago and you didn't want
                to. I told you that I would give you the car, and you didn't
                want it."

ESCOBEDO:       "No well, I don't want a car. I don't want anything. I said I
                wanted the money. I don't want any of that. I told you none
                of that. I told you...I told you from the beginning."

UCC 5:          "All right, well keep in mind that it' won't be on me. I told
                you that [U/I]."

                        [VOICES OVERLAP]

ESCOBEDO:       "No, I told you that... I told you, dude, "I want the money, I
                don't want any of that."

UCC 5:          "Well, there's no money."

9.      Based on training, experience, familiarity with the content of Sessions 21
and 41 between ESCOBEDO and UCC 5 on September 18 and September 19, 2015,
respectively, and with coded conversations generally, agents believe ESCOBEDO-
GAMBOA agreed to accept a "Pinguinito" (literally translated as "small penguin") as
payment to "Juan" (a reference to Juan DUARTE-TELLO).  Based on her statement that
"he doesn't want garbage...he wants a good Pinguinito," agents believe ESCOBEDO-
GAMBOA is referring to an unknown amount of high-quality ice methamphetamine.
Additionally, UCC 5 responded by asking ESCOBEDO-GAMBOA, "When have I given

you garbage or…or something like that?" which agents believe is evidence that she had acquired drugs from UCC 5 in the past. Based on the content of Session 42, agents believe UCC 5 also owed money to ESCOBEDO-GAMBOA, and she insisted on receiving cash only as payment, and UCC 5 therefore said, "I'll give you everything tomorrow…everything at once," referring to the amount he owed ESCOBEDO-GAMBOA and the drugs he was using as payment to "Juan".

10.     Additionally, when UCC 5 asked ESCOBEDO-GAMBOA how much her owed her, ESCOBEDO-GAMBOA said she had it all written down and would be able to tell him the total amount when she got home. On September 21, 2015, at approximately 0724 hours, agents intercepted an outgoing SMS text message (Session 72) from **Target Telephone 4** to phone number 209-XXX-2853, known to be used by ESCOBEDO-GAMBOA. Based on the information obtained during prior and subsequent interceptions, I believe the text message below was in reference to drugs and/or money UCC 5 stashed at ESCOBEDO-GAMBOA's residence, which represented the payment he promised to make to Juan DUARTE-TELLO and ESCOBEDO-GAMBOA. The content of the message is set forth below (translated from Spanish):

Session 72; 0724 hours; Outgoing text message from **Target Telephone 4** to 209-XXX-2853: "Answer so I can tell you where I left it because it's there."

11.     During the Court-authorized interception of UCC 5's **Target Telephone 4** from September 17, 2015, to September 25, 2015, and **Target Telephone 6** from October 2, 2015, to October 16, 2015, agents intercepted numerous pertinent trafficking communications between UCC 5 and MARTINEZ-ROSALES, and agents were able to determine that UCC 5, MARTINEZ-ROSALES, and Unindicted Co-Conspirator 1 (UCC

#1) were all affiliates of the Unindicted Co-Conspirator 2 (UCC 2)-"G" Drug Trafficking Organization (DTO), which maintained a close drug trafficking relationship with the DUARTE-TELLO DTO.

12.    On October 24, 2015, at approximately 0300 hours, Kansas Highway Patrol (KHP) Trooper (Trp.) Rodney King observed a silver Nissan Altima parked on the side of the highway on I-70 near mile marker 208.2, in Leavenworth County, Kansas. At that time, Trp. King also observed a male, later identified as Enrique MARTINEZ-ROSALES (a/k/a Jesus Enrique MARTINEZ-ROSALES, a/k/a "Quique") standing at the side of the road urinating. While approaching the vehicle with his emergency lights on, Trp. King observed MARTINEZ-ROSALES enter the drivers' seat of the Nissan. Trp. King made contact with MARTINEZ-ROSALES, the sole occupant of the vehicle, at which time he detected the strong odor of alcohol emanating from the vehicle and noticed the keys were in the ignition. After obtaining MARTINEZ-ROSALES' Mexico ID, Trp. King returned to his patrol vehicle observed MARTINEZ-ROSALES drive away. Trooper King initiated a traffic stop at that time and MARTINEZ-ROSALES was arrested after failing a Field Sobriety Test (FST)[1]. At the time of his arrest, MARTINEZ-ROSALES possessed approximately 2 kilograms of suspected methamphetamine and approximately $49,428 cash, and approximately 2 kilograms of suspected methamphetamine was seized during the subsequent consent search of his residence. Phone number 816-XXX-7317 was listed in the contact list of MARTINEZ-ROSALES' phone, which was later identified as a phone number used by ESCOBEDO-GAMBOA, and was the predecessor phone to ESCOBEDO-GAMBOA's **Target Telephone 8**. The

---

[1] The results of MARTINEZ-ROSALES' subsequent breath test indicated he had .238 grams of alcohol per 210 liters of breath.

2 kilograms of suspected methamphetamine from the Nissan was forensically tested and determined to contain 1,892 g ($\pm$ 73 g) of pure methamphetamine (ICE).

13.     On December 10, 2015, the Honorable Julie A. Robinson, signed an order authorizing interception of wire communications over ESCOBEDO-GAMBOA's phone number 913-XXX-3396 (**Target Telephone 8**), and interception of that **Target Telephone 8** commenced on December 11, 2015.  Interception was terminated on January 9, 2016.

14.     On December 12, 2015, at approximately 1319 hours, agents intercepted an incoming call (Session 42) to ESCOBEDO-GAMBOA on **Target Telephone 8** from phone number 816-XXX-2324, used by Unindicted Co-Conspirator 3 (UCC 3, below). An excerpt from that monitored and recorded communication is set forth below (translated from Spanish):

| | |
|---|---|
| **UCC 3**: | "Where are you?" |
| **ESCOBEDO**: | "I'm over here with my son, at his practices." |
| **UCC 3**: | "Hmm.  What time are you going to get to your house?" |
| **ESCOBEDO**: | "He is done, is just going to take me a moment to get there." |
| **UCC 3**: | "Oh... I'll arrive...I'll arrive like in fifteen minutes or twenty." |
| **ESCOBEDO**: | "Get there in like twenty or thirty minutes, honey." |

15.     Based on the content of subsequent interceptions, UCC 3 was identified as one of ESCOBEDO-GAMBOA's drug buyers, and I believe UCC 3' anticipated trip to her house was for the purpose of acquiring an unidentified amount of methamphetamine

from ESCOBEDO-GAMBOA. The same day, at approximately 1503 hours, agents intercepted an outgoing call (Session 52) from ESCOBEDO-GAMBOA on **Target Telephone 8** to phone number 816-XXX-5361, used by an unidentified male designated "UM52". During the call, ESCOBEDO-GAMBOA asked UM52 to come to her house and "clean the yard," and UM52 said he'd stop by in an hour. At approximately 1511 hours, agents intercepted an incoming call (Session 53) to ESCOBEDO-GAMBOA on **Target Telephone 8** from phone number 816-XXX-9493, used by a male tentatively identified as Unindicted Co-Conspirator 4 (UCC 4). An excerpt of that monitored and recorded call is set forth below (translated from Spanish):

| | |
|---|---|
| **UCC 4**: | "Hey, it was just that my uncle didn't understand anything about what you wanted, he said, "I didn' t understand and I was just saying yes." |
| **ESCOBEDO**: | "Well yes, I told him to come to the house." |
| **UCC 4.**: | "But... did you need "Algodon" [Literally: 'cotton'/ Slang: 'something'] or what?" |
| **ESCOBEDO**: | "Yes." |
| **UCC 4**: | "The same?" |
| **ESCOBEDO**: | "Yes." |
| **UCC 4**: | "In an hour?" |
| **ESCOBEDO**: | "Well, yes, in an hour or whatever." |
| **UCC 4**: | "Huh?" |
| **ESCOBEDO**: | "Yes." |
| **UCC 4**: | "Same as last time then?" |

**ESCOBEDO**: "Uh-huh."

16. Based on the content of Sessions 42, 52, and 53, I believe UCC 3 had arrived at ESCOBEDO-GAMBOA's house to purchase drugs, and ESCOBEDO-GAMBOA had asked UM52 to bring her more drugs to sell, but UM52 was unable to understand her request due to the way she coded her communication (ref. Session 52). UCC 4 subsequently called ESCOBEDO-GAMBOA (Session 53) to clarify her request to "clean up the yard" was actually meant to be a request for a drug delivery to her home. In Session 53, I believe UCC 4 agreed to deliver "something" to her in about an hour, and the drug amount and type would be "the same" as last time. Based on previous interceptions occurring over **Target Telephone 4**, together with the interception of **Target Telephone 8**'s Sessions 42, 52, and 53, I believe ESCOBEDO-GAMBOA frequently conducts drug transactions at her home.

17. On December 18, 2015, at approximately 1041 hours, agents intercepted an outgoing call (Session 289) from ESCOBEDO-GAMBOA on **Target Telephone 8** to phone number 913-XXX-0612, believed to be used by DUARTE-TELLO. An excerpt from the monitored and recorded communication is set forth below (translated from Spanish):

**ESCOBEDO**: "What was I going to tell you? Do you have 'cartitas' that you can send me?"

[VOICES OVERLAP]

**DUARTE**: "My woman sent them all...this fucking woman."

**ESCOBEDO**: "Fucking woman."

16

**DUARTE**:      "Yesterday she sent everything, the fucker. She's a fucking 'chucha' for the cards."

**ESCOBEDO**:    "Oh, my God…your woman."

**DUARTE**:      "Yes, yes, yes… But maybe something will fall later around the morning. [*/sniffs*]"

18.     Based on my familiarity with the targets of this investigation, knowledge of subsequent interceptions occurring over **Target Telephone 9**, and my review of a large number of structured cash deposits facilitated by ESCOBEDO-GAMBOA and/or HOLGUIN-GALLEGOS, I believe ESCOBEDO-GAMBOA gets paid an unknown fee for making the cash deposits of drug proceeds, and she asked DUARTE-TELLO if he had any deposits she could make on behalf of the conspiracy, to which DUARTE-TELLO replied, "My woman sent them all… Yesterday she sent everything, the fucker. She's a fucking 'chucha' for the cards," but added that he expected to collect more money later that day. During the course of the investigation, DUARTE-TELLO's "woman" has been identified as Diana Aurora HOLGUIN-GALLEGOS.

19.     On December 18, 2015, using Precision Location Information (PLI) for ESCOBEDO-GAMBOA's phone number 913-XXX-3396, surveillance was established in the area of North 21st Street, in Kansas City, Kansas, at approximately 1345 hours, at which time agents saw ESCOBEDO-GAMBOA's Nissan Versa parked outside the residence.

20.     That same day, at approximately 1430 hours, agents intercepted a pertinent drug trafficking communication (Session 302) between ESCOBEDO-GAMBOA and HOLGUIN-GALLEGOS. Precision Location Information (PLI) for

ESCOBEDO-GAMBOA's phone number 913-XXX-3396 indicated the device was in the District of Kansas at the time the call was intercepted, and the content of that interception indicated HOLGUIN-GALLEGOS was also in the District of Kansas at that time. During the call, ESCOBEDO-GAMBOA said she sold two "perfumes" to a man that was with "Mr. Alejandro" (the latter is believed to be a reference to "ALEJANDRO LNU"), and she was currently visiting an unidentified third party who wanted her to show him the "blankets" and "belts." HOLGUIN-GALLEGOS then told her to "...show them to him." I believe "perfumes", blankets", and "belts" were a coded reference to drugs, which HOLGUIN-GALLEGOS instructed ESCOBEDO-GAMBOA to show to the third party who was present with ESCOBEDO-GAMBOA when the call was intercepted.

21.     At approximately 1500 hours the same day, SA Kyle Beach observed ESCOBEDO-GAMBOA exit the residence and depart the area. At approximately 1509 hours, SA Beach observed a Green Chevrolet Suburban registered to "O.C." and "G.S." at 1630 South 29th Street, Kansas City, Kansas, depart the area of the residence, at which time it was occupied by two males (later identified as Unindicted Co-Conspirator 6 (UCC 6) and Unindicted Co-Conspirator 7 (UCC 7)). Shortly thereafter, Kansas City Kansas Police Department (KCKPD) Officer John Diaz and Sergeant James Zager conducted a traffic stop on the vehicle and made contact with UCC 6 (the driver) and UCC 7 (the passenger). During the stop, it was determined that UCC 6 did not possess a valid Drivers' License, and UCC 7 had local warrants for his arrest. Both men were arrested, and a small plastic bag containing approximately one ounce of a white, powdery substance that tested presumptively positive for cocaine was located in the center console of the vehicle during an inventory search of the vehicle.

22.     Based on the content of the call (Session 302) detailed in paragraph 20, above, together with the subsequent arrest of UCC 6 and UCC 7 in the District of Kansas, while in possession of approximately one ounce of cocaine immediately after meeting with ESCOBEDO-GAMBOA, I believe UCC 6 and UCC 7 acquired the cocaine from ESCOBEDO-GAMBOA.

23.     On December 22, 2015, at approximately 1508 hours, agents intercepted a pertinent trafficking communication (Session 501) between DUARTE-TELLO and ESCOBEDO-GAMBOA, at which time ESCOBEDO-GAMBOA stated she was at the Legends shopping plaza, in Kansas.  During the intercepted call, DUARTE-TELLO told ESCOBEDO-GAMBOA that he had to "turn in the house," and ESCOBEDO-GAMBOA said she wanted to, "…call this fucking dude, to see if he wants something," which I believe was a reference to an unidentified drug buyer that may want to purchase drugs from her.  DUARTE-TELLO told her he had already removed all the "tools" from the house, which is believed to be a coded reference to drugs being stored at the unidentified stash house that DUARTE-TELLO was vacating.  DUARTE-TELLO also said, "I want to see you to tell you something…I don't know what you'll think." Based on the content of a subsequently intercepted communication (Session 585) between ESCOBEDO-GAMBOA and "A.M.", I believe DUARTE-TELLO asked ESCOBEDO-GAMBOA to store drugs, drug proceeds, and/or clandestine laboratory-related equipment at her home.

24.     On February 12, 2016, agents initiated T-III interception of **Target Telephone 9**, and during the period of February 12, 2016, to February 15, 2016, agents intercepted numerous wire communications between DUARTE-TELLO, his various sources of drug supply, and other co-conspirators which provided evidence of the

19

DUARTE-TELLO DTO's drug trafficking and money laundering activities across several regions of the United States. Interception of **Target Telephone 9** is ongoing.

25.     On February 12, 2016, at approximately 1715 hours, agents intercepted an incoming call (Session 9) to DUARTE-TELLO on **Target Telephone 9** from phone number 816-XXX-2693, used by ESCOBEDO-GAMBOA. During that call, DUARTE-TELLO said he had four or five "cartitas" for her, so she could "work." That same day, at approximately 2127 hours, agents intercepted an outgoing call (Session 24) from DUARTE-TELLO on **Target Telephone 9** to 816-XXX-2693, used by ESCOBEDO-GAMBOA. An excerpt of that monitored and recorded call is set forth below (translated from Spanish):

| | |
|---|---|
| **DUARTE**: | "Oh, alright. [BACKGROUND NOISE: UC (U/I)] Listen you know how we wake up kind of late…" |
| **ECOBEDO**: | "Uh-huh." |
| **DUARTE**: | "…and tomorrow those things what you call it… the banks close… at what time do they close that shit tomorrow?" |
| **ECOBEDO**: | "At twelve." |

[OMIT]

[BACKGROUND: **HOLGUIN-GALLEGOS**: "*Bank of America* closes at twelve."]

| | |
|---|---|
| **ECOBEDO**: | "Uh-hum." |
| **DUARTE**: | "[*/stammers*] The *of America* at twelve and the other at two…" |
| **ECOBEDO**: | "Uh-hum." |

**DUARTE:**         "I don't know if you would like to come early over here?"

**ECOBEDO:**         "Oh yes, if you like I can go there early, if I am going to deposit on *America* then I can head early over there."


**DUARTE:**         "[*/stammers*] It is one…it is one…one…one, but so that you can take advantage."

[BACKGROUND: **HOLGUIN-GALLEGOS**:  "How many are you going to deposit? Two? Three?"]

**DUARTE:**         [ASIDE: Four.]

[BACKGROUND: **HOLGUIN-GALLEGOS**: "Two, two from…"]

**DUARTE:**         [ASIDE: "They are two from *America* and two from *Wells Fargo*, no?"]  "They are two from *America* and two from *Wells Fargo*.  That way…that way if [U/I] from one day to the next."

**ECOBEDO:**         "Uh-huh.  No, no. [*/yawns*] I'd better go early."

**DUARTE:**         "Yes, because I am going to leave from here around nine or ten…by the time we get there it will be eleven, and then we eat and then it will be twelve, so you are not going to make by then."

**ECOBEDO:**         "No, no, no, I'd rather head out there with you early."


**DUARTE:**         "Yes, come early and uh… and that way you can do the job and you can get a little money for you. [BACKGROUND:

> **HOLGUIN-GALLEGOS**: "They open at nine."] They
>
> open at nine, you'll finish in two hours.

26. Based on my training, experience, familiarity with the financial aspects of this investigation, and knowledge of prior and subsequent interceptions, I believe DUARTE-TELLO and HOLGUIN-GALLEGOS coordinated approximately four cash deposits (divided between Wells Fargo Bank and Bank of America) and tasked ESCOBEDO-GAMBOA with making those deposits in the morning of February 13, 2016.

27. On February 13, 2016, at approximately 1947 hours, agents intercepted an incoming call (Session 62) to DUARTE-TELLO on **Target Telephone 9** from phone number 909-XXX-5997, utilized by an unidentified male, designated Unindicted Co-Conspirator 8 (UCC 8) a.k.a "UM8" (UM8, below). Excerpts from that monitored and recorded communication are set forth below (translated from Spanish):

| | |
|---|---|
| **UM8**: | "The 'machaca' [*slang for deal/job*] is done." |
| **DUARTE**: | "What's done? Oh, already?" |
| **UM8**: | "The 'machaca' is done. I just pick them up and I'm heading home already." |
| **DUARTE**: | "Okay, what was I going to tell you? Tell me about the tools that are over there, how is that going?" |
| **UM8**: | "About what?" |
| **DUARTE**: | "About the tools...how is that coming? You never told me." |
| **UM8**: | "Oh, listen, there goes... on the left side there are twenty-four coming." |

22

DUARTE:           "Twenty-four?"

UM8:              "Twenty-four on the left side, on the right side there are
                  ten."

DUARTE:           "Twenty four and ten, how much is that?"

UM8:              "Twenty four and ten are... mmm... thirty four, and there
                  are five on the front."

DUARTE:           "Oh!  There are some on the front, buddy?"

UM8:              "Yes, also in the front. It's because...Juan, I'm going to be
                  honest, Juan. It's because you are getting fucking a lot this
                  time and I had to look everywhere.  No, I did my best.  If
                  you scold me...fuck it, scold me. I put in everything that I
                  could, fuck it, because it's a lot of fucking meat, this time."

28.      That same day, at approximately 2330 hours, agents intercepted an

outgoing call (Session 72) from DUARTE-TELLO on **Target Telephone 9** to phone

number 714-XXX-0392, utilized by an unidentified male referred to as Unindicted Co-

Conspirator 9 (UCC 9) a.k.a "Guero," and designated "UM41" (UM41, below).  The

content of that monitored and recorded communication is set forth below (translated from

Spanish):

UM41:             "Yes, tell me."

DUARTE:           "Where are you my 'Guero'?"

UM41:             "We are here...on our way.

DUARTE:           "How long is going to take you?"

UM41:             "I think around six hours."

DUARTE:           "Oh, I will see you here in the morning, in the morning."

UM41:             "Yeah!  Like around seven, more or less...around that."

**DUARTE:**      "Yes, call me half an hour before to take the fucking cars out."

**UM41:**      "Yeah, that's fine...that's fine."

**DUARTE:**      "All right then.  Just be really careful...follow the limit."

[OMIT]

29.      Based on my training, experience, and familiarity with prior and subsequent interceptions obtained during this investigation, I believe UM8 is a source of drug supply, and he told DUARTE-TELLO during Session 62 that he secreted approximately 39 kilograms of drugs (believed to be ICE methamphetamine) in an unidentified vehicle to prepare it for transit to DUARTE-TELLO, who operates a drug distribution cell in the Kansas City area.  Additionally, I believe UM41 is a drug courier employed by UM8 to transport the drugs to DUARTE-TELLO, and during Session 72, UM41 told DUARTE-TELLO he was in transit to the Kansas City area, and he expected to arrive in approximately six to seven hours from the time the call was intercepted, evidenced by his statement that he would arrive in "around six hours...like around seven, more or less...around that."  I also believe DUARTE-TELLO told UM41 to "...call me half an hour before..."  UM41 expected to arrive so he could "take the fucking cars out," meaning he wanted to move the cars at his residence to give the courier room to park the load vehicle close to, or inside, the garage at DUARTE-TELLO's residence, identified as being  on Greenwood Road, in Kansas City, Missouri.  Finally, I believe DUARTE-TELLO warned UM41 not to rush, and encouraged him to "follow the [speed] limit" in order to avoid a possible interdiction of the drugs by law enforcement.

30.      On February 14, 2016, at approximately 0526 hours, agents observed an incoming call (Session 74) to **Target Telephone 9** from phone number 714-XXX-0392, but the call was not monitored.  A review of pole camera surveillance footage recorded at

the address on Greenwood Road, in Kansas City, Missouri, showed that at approximately

0533 hours, an unidentified person moved DUARTE-TELLO's white Chevrolet

Silverado pickup truck and an unidentified minivan to the right side of the driveway. At

approximately 0606 hours the same day, agents observed another incoming call (Session

75) to **Target Telephone 9** from 714-XXX-0392, which was not monitored. Pole

camera footage showed that at about that same time, an unidentified crossover SUV

pulled into DUARTE-TELLO's driveway on Greenwood Road, in Kansas City,

Missouri, and appeared to park inside the garage of the residence.

31.     On February 14, 2016, at approximately 0932 hours, agents intercepted a

communication (Session 80) between DUARTE-TELLO on **Target Telephone 9** and an

unidentified male known only as "ALEJANDRO LNU", during which DUARTE-

TELLO told ALEJANDRO LNU that "Carlitos" hadn't arrived yet, and ALEJANDRO

LNU said he would contact "Carlitos." Prior interceptions indicate ALEJANDRO LNU

is one of DUARTE-TEELO's high-volume drug buyers in the Kansas City area. At

approximately 0944 hours, agents observed a SMS text message contact (Session 82)

between phone number 951-XXX-5271 (known to be used by CARLOS/Carlitos) and

**Target Telephone 9**. The content of that SMS text message is unknown. At

approximately 1010 hours the same day, pole camera video footage showed a red sedan

arrive the Greenwood Road address, and a Hispanic male exit the vehicle, enter the

residence, then exit the residence carrying a small package, after which he reentered the

red sedan and left the area.

32.     On February 15, 2016, at approximately 0946 hours, agents intercepted an

incoming call (Session 134) to DUARTE-TELLO on **Target Telephone 9** from phone

25

number 909-XXX-5997, utilized by "UM8."   Excerpts from that monitored and recorded

communication are set forth below (translated from Spanish):

**DUARTE**:       "Hello?"

**UM8**:          "What are you doing Juan?  Good morning!"

**DUARTE**:       "Good morning, dude, good morning."

**UM8**:          "Hey, I was going to ask you something…did my 'cousins' arrive
                  well and shit?"

**DUARTE**:       "Yes."

[OMIT]

**UM8**:          "Because I thought it was strange that you didn't call me to ask me
                  anything."

**DUARTE**:       "Well, right away…right away, the thirty-nine that you told me…it
                  was thirty-nine, right?"

**UM8**:          "Yeah, thirty-nine."

**DUARTE**:       "Yes, everything…everything well…everything's good, dude."

**UM8**:          "Hey, and what do you think of the little job how I am making it?"

**DUARTE**:       "It's good, it's good."

**UM8**:          "It's good that way?"

**DUARTE**:       "Yes, all at once."

[OMIT]

**DUARTE**:       "Yes, it's not... uh... what was I going to tell you?  I think that
                  tomorrow, tomorrow or maybe today the ones from Beto will call
                  you."

**UM8**:          "They're going to... oh, okay."

**DUARTE:** "Today or tomorrow. [*/stammers*] I think that tomorrow or maybe tomorrow, just so you can keep an eye out."

**UM8:** "And at how much are those going to be?"

**DUARTE:** "I don't know, dude. It could be another twenty or thirty hours."

**UM8:** "All right, dude. All right then."

33.    Based on my training, experience, and familiarity with prior and subsequent interceptions obtained during this investigation, I believe UM8 called to confirm the delivery of approximately 39 kilograms of methamphetamine to DUARTE-TELLO at Greenwood Road, in Kansas City, Missouri and DUARTE-TELLO confirmed receipt of the drugs.

34.    On February 16, 2016, the Honorable James P. O'Hara, signed an order authorizing the acquisition of Precision Location Information (PLI) for phone number 951-XXX-5271, known to be used by CARLOS LNU, and referred to as "CARLOS" or "Carlitos" during intercepted communications occurring over Juan DUARTE-TELLO's **Target Telephone 9**.

35.    On February 17, 2016, at approximately 0620 hours, agents obtained PLI data for phone number 951-XXX-5271 that indicated the device was located in the area of the 4500 block of Haskell Avenue, in Kansas City, Kansas, during the overnight hours. Surveillance was established in the area at approximately 0645 hours, at which time SA Kyle Beach observed a red 2003 Volkswagen Jetta, registered to "C.T.G." on Haskell Avenue, Kansas City, Kansas, which was parked in the driveway of the residence.

36.    At approximately 0712 hours the same day, SA Beach observed the Jetta depart the area of the residence with a sole occupant, and PLI data for phone number 951-XXX-5271 showed the device was moving with the Target Vehicle away from the

27

residence. Surveillance was maintained on the Jetta while it traveled to Speedway Superstore, located at 4746 Parallel Parkway, in Kansas City, Kansas, then again during the return transit to Kansas City, Missouri.

37. At approximately 0745 hours, Kansas City Missouri Police Department (KCMPD) Officer (Ofc.) Willie A. Watson initiated a traffic stop on the Jetta for crossing the center line (lane weaving) and made contact with the driver at or near 7005 Ruskin Way, Kansas City, Missouri. The driver, CARLOS LNU, provided a Mexican Passport and Mexican Drivers' License bearing the name of "Ricardo JIMENEZ-RAMIREZ"[2], and provided a phone number of 913-XXX-4480. The driver was released on site and provided with a verbal warning only. After being released from the traffic stop, pole camera video footage recorded at Greenwood Road, Kansas City, Missouri, showed CARLOS LNU arriving at that residence at approximately 0757 hours.

38. On February 17, 2016, at approximately 0814 hours, agents intercepted an outgoing call (Session 198) from DUARTE-TELLO to phone number 951-XXX-5271, used by a CARLOS LNU. Excerpts of that monitored and recorded communication are set forth below (translated from Spanish):

**DUARTE**: "Do the things right, Carlitos. Do things right all the time. For me it would have been better that you would have come to the house yesterday. It doesn't matter that…"

[VOICES OVERLAP]

**CARLITOS**: "Yeah…"

---

[2] During the interception of **Target Telephones 8** and **9,** agents recorded communications regarding the acquisition of counterfeit Mexican Passports by DUARTE-TELLO on behalf of DTO members and affiliates. That information, together with interceptions wherein family members and DTO members all refer to "Ricardo JIMENEZ-RAMIREZ" as "Carlitos," or "Carlos," I believe "Ricardo JIMENEZ-RAMIREZ" is not his true name.

28

**DUARTE:**      "It doesn't matter [/*stammers*]. It's not good to be in a hurry, never. Never is good to be in a hurry. You know what I mean?"

**CARLITOS:**      "Yes."

**DUARTE:**      "All the time… I mean… [/*stammers*] If things are not supposed to happen, then they're not going to happen. But don't be in a hurry… don't be in a hurry because that's where the problems start."

**CARLITOS:**      "Yes, yes."

[VOICES OVERLAP]

**DUARTE:**      "That…that car… with that stop…is no longer good for you to be working in it. I mean, how weird… how weird that they got the wrong the fucking address?"

**CARLITOS:**      "Yeah, when I went to…when I went to register the car, it was under Jackie's address and I told them…I told them that not under that one… that… I gave the other one, and supposedly the girl put the other address, but [U/I] Jackie's address, over there in Missouri."

**DUARTE:**      [/*stammers*] What is the address on the registration?

**CARLITOS:**      "Well the…the registration is under the address that I live now, the…the [/*stammers*] "Fairway" [PH].

**DUARTE:**      "Oh, fuck."

**CARLITOS:**      "Yeah, but the plates, aren't. He said the license plates are registered in Missouri. And he said, 'You have address of Missouri, and you have license plates from Kansas. What

happened?' I said, 'No, I don't know…it's my friend's car.'"

[OMIT]

**DUARTE**: "Well, the good thing is that nothing happened… that he didn't 'sacudio' [Literally: shake/ Slang: search] you. Otherwise you will fuck up."

**CARLITOS**: "Yes, well I have a lot of… I have a lot of things, since I moved out and I have a lot of stuff back there. And back there I have that shit."

**DUARTE**: "Oh, good, good. Anyways [/stammers] no, no, hum… no, hum… It isn't good that you carry things just like that. No, no, between the garbage. In a little truck, like the one that you had before…a little truck with the machine…with… carry the garbage, doesn't matter that the fucking trunk gets damage with the garbage, it's preferable. It's better that the fucking trunk gets damaged, and between the garbage you can hide your…you know. Because otherwise you'll get fucked up and it's tough."

[VOICES OVERLAP]

[OMIT]

**DUARTE**: "Are you taking the pots… the pots for the 'carne' [Literally: meat] now?

**CARLITOS**: "No, yesterday I chan – I was doing all that, yesterday."

**DUARTE**: "You took all the pots?"

[VOICES OVERLAP]

**CARLITOS**: "I changed everything yesterday."

30

**DUARTE:**          "Oh, that's good, that's good…much better. Um…"

                    [VOICES OVERLAP]

**CARLITOS:**        "Yeah, last night I changed everything."

**DUARTE:**          Did you take the 'carnita' that was down in the basement?

**CARLITOS:**        "That was what my father was asking me, if I took
                    everything, and I'm coming to check to see if I didn't leave
                    anything."

**DUARTE:**          [/stammers] Where the… where the wall is at, there is a pot
                    with "carne," Carlitos.

**CARLITOS:**        "Oh, I'm parked right here.  I'm going to the house and I'm
                    going to get that one. I'm going to take that one."

                    [VOICES OVERLAP]

**DUARTE:**          Okay. Yes take that pot. There is at… you know where the
                    dirt is at, [U/I] the basement.

                    [VOICES OVERLAP]

**CARLITOS:**        "Yeah… yeah."

[OMIT]

**DUARTE:**          "Yes, a pot full with 'carne'. Just put it in right…"

                    [VOICES OVERLAP]

**CARLITOS:**        "Okay."

**DUARTE:**          "Put it in right, in a way that it won't move, because
                    otherwise will spill."

39.    Based on training, experience, knowledge of other interceptions from

**Target Telephone 9** and the various target telephones associated with this conspiracy, and familiarity with the targets of this investigation, I believe Session 198 was a continuation of a conversation between DUARTE-TELLO and CARLOS LNU that occurred at Greenwood Road, in Kansas City, Missouri, following the aforementioned traffic stop. During the call, I believe DUARTE-TELLO placed responsibility for the traffic stop on CARLOS LNU, and told him he needed to stop using the red Jetta to transport drugs and drug proceeds as a result of the law enforcement contact. During the call, I believe DUARTE-TELLO asked CARLOS LNU if he had moved the laboratory equipment and/or drugs from the old stash house to the new stash house, evidenced by his query, "Are you taking the pots…the pots for the [meat] now?" I also believe DUARTE-TELLO asked about one specific "pot" that contained "carne" (translated as "meat"), the latter of which I believe is a coded reference to liquid methamphetamine based on his subsequent warning that it might "spill."

40.    At approximately 0817 hours, agents used updated PLI data for phone number 951-XXX-5271 to determine the device was at or near the 10000 block of Oakley Avenue, in Kansas City, Missouri. At approximately 0845 hours, Task Force Officer (TFO) Brent Kiger observed the Jetta parked in a driveway on Oakley Avenue, and physical surveillance of CARLOS LNU and the Jetta was re-established.

41.    At approximately 0905 hours, TFO Kiger saw CARLOS LNU exit the residence carrying white plastic bags. TFO Kiger also observed the bags appeared to be heavy and CARLOS LNU was visibly off balance, as he entered the drivers' side of the vehicle, and immediately left the area.

42.    Surveillance was maintained on the Jetta, which traveled to the area of

32

Oldham Road and East 85th Terrace in Kansas City, Missouri. The Jetta was seen

traveling north on Oldham Road, then west on East 85th Street at approximately 0915

hours. At approximately 0917 hours, SA Beach was driving west on East 85th Street and

saw CARLOS LNU walking out of the garage door of a residence in the 8500 block of

Crystal Avenue, in Kansas City, Missouri, while the garage door was closing. CARLOS

LNU then re-entered the Jetta, which was parked in the driveway at that residence, and

drove away.

      43.    On February 18, 2016, at approximately 1017 hours, agents intercepted a

pertinent trafficking communication (Session 244) between DUARTE-TELLO and

"ALEJANDRO LNU." At the time the call was intercepted, Precision Location

Information (PLI) for "ALEJANDRO LNU's" phone number 951-XXX-9653 showed

the device was in the District of Kansas, at or very near to the residential address located

in the 4500 block of Haskell Avenue, in Kansas City, Kansas. During the monitored and

recorded conversation, DUARTE-TELLO asked ALEJANDRO LNU if he still had

enough drugs to sell to his customers, which he referred to as "food for the cows," and

ALEJANDRO LNU replied, "five…there are ten…still," which I believe is a reference to

10 kilograms or pounds of methamphetamine, that were still available for distribution.

DUARTE-TELLO also advised, "…they will arrive on Tuesday," but if ALEJANDRO

LNU needed them before Tuesday then "[he] can send them sooner," which I believe

meant DUARTE-TELLO could arrange for the next shipment of drugs to arrive prior to

Tuesday, February 23, 2016. Finally, ALEJANDRO LNU and DUARTE-TELLO

appeared to discuss the amount of drug proceeds ALEJANDRO LNU had collected as

payment for drugs fronted to buyers, evidenced by his statement that he "…only [had] ten

'pesitos'" (a probable reference to $10,000 cash) on hand.

44.     On February 18, 2016, at approximately 1741 hours, agents intercepted a pertinent trafficking communication (Session 259) between DUARTE-TELLO and "CARLOS LNU".  Session 259 ended at approximately 1747 hours, and using PLI for CARLOS LNU's phone number 951-XXX-5271, agents determined that at approximately 1751 hours, the device was at or very near to CARLOS LNU's residence, located in the 4500 block of Haskell Avenue, in Kansas City, Kansas.  Based on that information, I believe CARLOS LNU was in the District of Kansas at the time the communication was intercepted.  During the call, DUARTE-TELLO asked if CARLOS LNU had any "cartitas," (which is frequently used by members of the DUARTE-TELLO conspiracy as a coded reference to currency) and CARLOS LNU said he did.  DUARTE-TELLO then instructed CARLOS LNU to take the "cartitas" to ESCOBEDO-GAMBOA. Based on my knowledge of the coded communications of the DUARTE-TELLO DTO, I believe the call pertained to the transfer of drug proceeds from CARLOS LNU to ESCOBEDO-GAMBOA.

45.     On February 21, 2016, at approximately 1031 hours, agents intercepted an outgoing call (Session 400) from DUARTE-TELLO on **Target Telephone 9** to phone number 909-XXX-5997, used by "UM8".  An excerpt from that monitored and recorded call is set forth below (translated from Spanish):

> [OMIT]
>
> **DUARTE**:     "Where are you? [U/I]."
>
> **UM8**:     "Here waiting. The cousin is on his way. My cousin is coming to leave from here."

| DUARTE: | "So did they get the 'familia' that you wanted?" |
|---|---|
| UM8: | "Yes, yes, they did get some. They found what I wanted." |
| DUARTE: | "Okay, okay. All right then, dude. Put the boots and the dishes so I can eat here." |
| UM8: | "It's set, it's set, it's set." |
| DUARTE: | "All right. When the dude leaves, send me a text, I'm, I'm going to be on the air." |
| UM8: | "Yes, I'll send you a text. When you receive them all, give me a call if you want, in the afternoon, however you want." |
| DUARTE: | "Yeah, in the afternoon I'll see what's up. All right then, dude, just be very careful, okay?" |

46. On February 21, 2016, at approximately 1201 hours, agents intercepted an outgoing call (Session 412) from DUARTE-TELLO on **Target Telephone 9** to phone number 909-XXX-5997, used by "UM8". Excerpts from that monitored and recorded call are set forth below (translated from Spanish):

[OMIT]

| DUARTE: | "What happened, dude? [/stammers] Did you call me?" |
|---|---|
| UM8: | "Yes. [U/I] The 'machaca' [Slang: "job/deal] is done. They're going... My cousins are already on their way." |
| DUARTE: | "They're coming?" |
| UM8: | "My cousins are already on their way. They headed out ten minutes ago." |

[OMIT]

| DUARTE: | "What was I going to tell you? How is that thing coming?" |

UM8:        "Twenty on the left side, and eighteen on the right side."

DUARTE:     "Twenty and eighteen?"

UM8:        "Twenty, eighteen. They're coming... Twenty... twenty, the report is coming with twenty on the left side of the wall of the building where you sent me..."

DUARTE:      "Uh-huh."

UM8:        "And... the other eighteen hours that you [AUDIO GLITCH] and the old stupid man are coming on the other side...eighteen."

DUARTE:      "Oh that's fine, dude. That's fine. Thank you."

[OMIT]

47.  On February 21, 2016, at approximately 2311 hours, agents intercepted an outgoing call (Session 446) from DUARTE-TELLO on **Target Telephone 9** to phone number 714-XXX-0392, used by "UM41".  An excerpt from that monitored and recorded call is set forth below (translated from Spanish):

[OMIT]

UM41:       "Here, we are on our way."

[OMIT]

UM41:       "One question, uh...in "Englewood" [PH] Spring...there in Colorado."

DUARTE:     "Yes."

[OMIT]

UM41:       "It's closed there."

DUARTE:     "It's closed?"

**UM41:** "It's closed. Uh…announces forty and… [ASIDE: What other one?] And hundred and ninety-one, which one would be better?"

**DUARTE:** "Oh, shit. [*/stammers*] But why is it closed?"

**UM41:** "I don't know, uh… [*/stammers*] When I take [U/I] over there by fifteen."

**DUARTE:** "Uh-huh."

**UM41:** "It announced over there. It announced over there that it was close. And then, when we arrived to…to seventy (70) it also said. But it doesn't say why. I don't know if you want to check on the internet, to see if there is something."

**DUARTE:** "[*/stammers*] I mean, any way that you want, Guero. Any way, it's not a problem, Guero."

**UM41:** "Uh-huh, but…"

[VOICES OVERLAP]

**DUARTE:** "[*/stammers*] I just got here, I honestly, I don't know what the deal is."

[OMIT]

**DUARTE:** "Another car came ahead of you, and they took all seventy."

**UM41:** "Uh-huh.  What was that?"

**DUARTE:** "Some dudes came ahead of you on seventy."

**UM41:** "Uh-huh."

**DUARTE:** "And they are coming just fine."

**UM41:** "And are they coming okay?"

**DUARTE:** "Well, they already arrived to Denver."

[OMIT]

48.  Based on training, experience, knowledge of interceptions occurring over **Target Telephone 9** during the course of this investigation, and my familiarity with trafficking communications, I believe Sessions 400 and 412 between DUARTE-TELLO and "UM8" pertain to the transportation of approximately 38 kilograms of methamphetamine that departed from UM8's California residence en route to Greenwood Avenue, in Kansas City, Missouri, at approximately 1150 hours.  Based on the information obtained from Session 446 between DUARTE-TELLO and "UM41" (a/k/a "Guero"), UM41 is the drug courier tasked with transporting the drugs.  When UM41 asked DUARTE-TELLO for advice on the best route to travel based on road closures, DUARTE-TELLO said, "another car came ahead of you, and they took all seventy…they already arrived to Denver."  Based on that information, I believe that a second shipment of drugs was arranged by DUARTE-TELLO and had a lead time of approximately three to four hours on UM41's Kansas City-bound transit.

## REQUEST FOR SEALING

IT IS FURTHER REQUESTED that this Complaint, the resulting Warrant, and all return documents submitted pursuant to the Warrants be sealed until further order of this Court because disclosure of the information contained herein would alert the subjects of the investigation to the existence of this investigation and thereby compromise this investigation and will identify the existence of and potentially the identities of the confidential sources and witnesses, thereby possibly placing the confidential sources and witnesses in danger of retaliation.  I respectfully request the Court order this Complaint

38

and resulting Warrants be unsealed upon the arrest of any of the defendants named herein.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

2/22/16

Brandon S. Burkhart
Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence this 22 day of February 2016, in Kansas City, Kansas.

HONORABLE JAMES P. O'HARA
United States Magistrate Judge
District of Kansas

## PENALTIES:

**Count 1:  21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846.**

- NLT 10 years NMT life imprisonment;
- NMT $10,000,000.00 fine;
- NLT 5 years supervised release;
- $100.00 special assessment fee.

If the defendant has a prior conviction for a felony drug offense the penalties are:

- NLT 20 years NMT life imprisonment;
- NMT $20,000,000.00 fine;
- NLT 10 years supervised release;
- $100.00 special assessment fee.

If the defendant has two or more prior convictions for felony drug offenses the penalties are:

- NLT life imprisonment;
- NMT $20,000,000.00 fine;
- NLT life supervised release;
- $100.00 special assessment fee.

**Counts 2–5:  21 U.S.C. § 843(b) and 18 U.S.C. § 2.**

- NMT 4 years imprisonment;
- NMT $250,000 fine;
- NMT 3 years supervised release;
- $100 special assessment fee.

**Count 6:  21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii).**

- NLT 10 years NMT life imprisonment;
- NMT $10,000,000.00 fine;
- NLT 5 years supervised release;
- $100.00 special assessment fee.

If the defendant has a prior conviction for a felony drug offense the penalties are:

- NLT 20 years NMT life imprisonment;
- NMT $20,000,000.00 fine;
- NLT 10 years supervised release;
- $100.00 special assessment fee.

If the defendant has two or more prior convictions for felony drug offenses the penalties are:

- NLT life imprisonment;
- NMT $20,000,000.00 fine;
- NLT life supervised release;
- $100.00 special assessment fee.

**Count 7:  21 U.S.C. § 856(a) and 18 U.S.C. § 2.**

- NMT 20 years imprisonment;
- NMT $500,000 fine;
- NMT 3 years supervised release;
- $100 special assessment fee; and
- Forfeiture allegation.